The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. All right, thank you. We'll hear the next case, Clayland Farm Enterprises v. Talbot County, and representing Clayland Farms, Mr. Gabler, you can begin. Yes, Your Honor, thank you. Mark Gabler, may it please the Court. Good afternoon. It's a pleasure to be here with you today. We are here appealing the grant of summary judgment by Judge Russell of the U.S. District Court against Clayland Farm on the federal and state takings claims that were made in our complaint, as well as the substantive due process claims. Judge Russell also dismissed some of the state law declaratory judgment and injunctive relief claims based on mutinous, and I'd like to address those briefly in that order. Let me start by mentioning there are two basic complaints that we've made about Talbot County and the things we've done to Clayland Farm that have impacted Clayland Farm, and those involve the moratorium, development moratorium, as well as the improper tier map designation. And I preface that by saying, Judges, I've read at least some of the cases in this area, and I've seen various references to the Court's reluctance to wade into these kinds of land use, local land use disputes, and I would just remind the Court, as I'm sure you know, that both of our complaints, which were now ultimately consolidated, were filed in state court and ultimately removed to federal court. In this case, Talbot County imposed a moratorium that began in the year 2012, and that was the moratorium that ultimately lasted six years and prevented landowners with properties in the village center zoning districts from pursuing any development other than a single lot. The purpose of that moratorium was not to address any specific exigency or emergency. It was simply to prevent village center properties from being subdivided or developed, until at some point in the future, when the county could complete its comprehensive plan and comprehensive rezoning process. Ultimately, that was completed in 2018, and the moratorium was then terminated. In the case of Clayland Farm... As you're getting into it on the subject of due process, you have to establish at least some type of protected property right here, and I'm trying to determine what is that right that you say you have? Well, I would tell you that there were a number of rights that we had before the moratorium was put into place. This property was zoned village center, capable of being developed with residential development at four units per acre. We had water and sewer service under an existing service. We had an S-1 designation and a connector line adjacent to the property. We had consistency with the comp plan and all the various conditions of development we had. How do you distinguish it from the Sienna Court case? That was the case you had the storage building up there, and the court said, you know, I guess like here, there was no permit that's been issued and no construction and anything there, and says, well, you know, that's not there. Well, I distinguish it on several grounds. First of all, that was more of a vested rights analysis in that case, and our case would be similar to that if there was never a moratorium that was put in place, in our view, unlawfully by the county. So, in 2012, the county said, no development, no subdivision of this parcel and other parcels in village center districts, and that prevented our client from moving forward with subpoenas. I'm just trying to get to the heart of it, because I think this is key, at least from my perspective, and that is, you know, you mentioned some designations, you know, the sewer status and things like that. Do they just last forever? I mean, it seems like to me, you're claiming a constitutionally protected right for designations, and they just stay there. Well, they stay there until they're properly changed, and properly changed does not mean any legal moratorium that's not designated to address any specific purpose or exigency. But what affirmative things did your clients do? I'm thinking of the designation, the S1, whatever designation, they had a sewage one, and others. Those were really governmental type things. Did you mention they had done something to the property along getting a permit, or doing something like construction, or something like that? They had previously subdivided six lots from the property in 1991, or an earlier date like that. But once the moratorium was put in place, there was nothing. When was the moratorium put in place? There was an initial resolution in 2011, and then there was a bill. So in 1991, they subdivided some property into six, and I guess this was their parents. Yes. Is that right? Okay, the parents did that, and 2011, you didn't have a moratorium, and you're saying there's a constitutionally protected right that derives from dividing up into six lots back in 1991? No, what I'm saying to you is that once the zoning is conferred to our clients, and to this property, the county is not able to just change that zoning at their whim, or at their, you know, whenever they choose to, unless they go through the proper process, which is the comprehensive planning process. When did the corporation come into existence? That's what I'm trying to get at. You told me what the parents did. I'm not sure that, does that really apply? I mean, isn't it what's happening with the corporation? When did the corporation come into existence? Your Honor, I don't have the specific date in front of me. I'll try to find it while I'm continuing the argument, but this was a family-owned corporation that was started, I believe, by Miss Brian and her brother. I know what it is. I'm just trying to understand what the protected right here, and what occurred with regard to this corporation, this asserting this constitutionally protected right. What occurred was that in 2012, the county placed a moratorium on any further subdivision or development, so there was nothing that Clayland Farm could have done to pursue their rights. And that moratorium, under all of the cases that we heard, was very unreasonable, because it wasn't designed to do anything. What had you done up until that time? Up until 2012, I thought your client had put the land in an agricultural circumstance for a tax benefit, and never sought any development rights. And it seems to me that even as of today, they haven't. And the question that Judge Wynn is asking is to focus in on what is the right that you're trying to protect with substantive due process. The right is the property interest we have, and the zoning classification of the property. We've cited the EJS properties case versus City of Toledo. That's a Sixth Circuit decision. We've also cited Washaweski versus Winston out of the Fourth Circuit. We believe that once the county confers the benefit of zoning, the zoning stays until the county pursues a proper procedure to change the zoning. Do you have a case that says a zoning is a protected right? The case I just cited, your honor, property owners may have a property interest in the existing zoning classification for their property. Property owners similarly have an interest in a discretionary benefit, such as a rezoning ordinance, after it is conferred. In this case, the property in question, the Clayland Farm property, had the Village Center zoning for many years. And if the county, rather than imposing an unlawful moratorium in 2012, would have started the comprehensive plan process, followed by the comprehensive rezoning process, our client would have had at least six years to pursue a subdivision approval and potentially vest their rights in the zoning to prevent it from being downzoned. So in this particular case, what the county did was they imposed a moratorium for no stated purpose, just because they ultimately pre-decided that they were going to downzone this property. And that moratorium prevented our client from securing any rights, and we had to sit there and be the victim of this downzone. We filed this lawsuit. We were removed to federal court. We filed the second lawsuit. We got removed to federal court again, and here we are. What steps has Clayland, the corporation or the LLC, what steps has it taken at any time since its existence? I think it came into existence around 2002, but at any time since its existence, what steps had it taken to pursue development? What drawing or plan or letter or description of a plan or development plan, application, anything to disclose that they wanted to do anything? Your Honor, there is a sketch plan, and to be honest with you, I don't know where or if that's in the joint appendix. But the truth is, is that when this moratorium was adopted, that prevented them from doing anything. That said, no more development, no more subdivision, that's it. And so at that point, there was nothing. Well, you had 10 years from 2002 until 2012. I understand. The property had been subdivided, and you did nothing. You didn't even develop a plan. Well, they were farming the property, Your Honor, and they had every intention, as Ms. Bryan testified. What's the evidence of that? I'd like to see. I looked for it. I didn't see any letter to the county, any application, any indication of intent. She testified without refuse. No one disputed her testimony and her deposition that they had intended to develop this property in the future. They were relying upon the value in that property to use for college, for their children, or whatever it may be in the future. And then that right is taken away from them as if it never existed. And the county is supposed to go through a process, a process that involves the public, public notice, public comments, etc. And our client could have, at that point in time, if this moratorium was not in place, could have presented an application, could have pursued the matter to get her subdivision approval long before the property was ever down. But this was a preemptive strike by the county. It was a moratorium. Let me just, I think what we're trying to understand, and maybe this is where we're running to a brick wall, so to speak, on this. But just to be clear, you can have a vested right in an existing zoning act. I mean, that's established. You can have that. But there's case law, this Maryland Reclamation case is one on point that says that, well, if you're going to have that, the owner must have done something, must initially obtain a valid permit and begin construction. And in this case, nothing was done. And there's no permit, there's no construction. Yeah, you got a zoning right, but it doesn't last forever if you do nothing. I agree with that, Your Honor. But the reason, I don't disagree with what the court is saying. The reason nothing was done is because the county put a moratorium in place saying nothing could be done. So if, in fact, there was no moratorium and the county went through the appropriate comp rezoning process, comp planning, comp rezoning process, and changed the zoning of our client's property without us having vested our rights, that would be a different issue. In this case, in order to... You know, that statement seems to suggest when the moratorium was put in place in 2012, that you had something planned and ready to go. Let's say you didn't get a permit, but you had some kind of plan, some kind of drawings, and the moratorium interrupted you. But the record's devoid of that. Your Honor, my client was not anticipating the county depriving her or taking away all of the development rights that existed on the property. It's not something that she has to pursue in order to have this value to have been taken from her. This moratorium has no basis in fact or law. All of the cases on moratoriums say there has to be some focused purpose, some exigency that the moratorium is addressing. In this case, it was just, we don't want them to beat us to the punch. We don't want anybody to secure their rights before we can down zone them. And it took six years. These property owners should be entitled to rely upon the zoning that they have, pursue development and use of their property based on the existing zoning until it is properly changed. You could have done something with the six properties, couldn't you? You had six parcels that were subdivided. Did you do anything with those? We can. Did you do anything with them? We've not built on them, Your Honor, no. Have you made any plans or applications to build on them? Not at present, Your Honor, no. At any time up to now? No, we just had them subdivided. That's all we've done. Right now we're trying to figure out, you know, how to deal with this situation with the county putting us on hold through this moratorium and then imposing this down zoning on the property. You know, we're not arguing with the county. Why didn't you challenge the moratorium when it was first imposed upon you and then say in your challenge that, well, we've got plans to do this and do that, and you're infringing on that right. But you sat on your hands for six years. No, Your Honor, we filed this lawsuit in 2014. So we filed it about a year and a few months after the moratorium was put in place. So we pursued it pretty quickly. And so what did you tell the court when you filed your suit? What were your plans? That's what we did. Judge Nebauer and Judge Winner, trying to get that out of it. That goes to the substantive due process claim. We did not develop a specific plan prior to the moratorium. When Ms. Bryan came to us and we met with her about the moratorium, we explained there's no use in spending $20,000 on an engineer to prepare a plan. The county has imposed a moratorium. So we filed a lawsuit to challenge the moratorium. Initially, we didn't have success, and Judge Motz in the district court said that our claims weren't right. We went up on appeal and were before your court in 2016. That was sent back. And now here we are again saying some of the claims are moot. So, you know, we're just trying to get the court to understand that this moratorium is the crux of the issue. And that is what prevented our client from securing her rights and preventing me from telling you this is what she has done in the remaining few minutes from my rebuttal. All right. Thank you. Thank you. Ms. Shearer. Victoria Shearer on behalf of the Chava County Appellee, and may it please the court. Could you speak up just a bit? Of course. Or get your microphone closer or something. Okay. So our first argument is that the plaintiff lacks a protected property interest to support the constitutional claims for substance of due process and taping. And we did cite the Wash-Waleski case, or however you pronounce that. So he says he has a vested right because of zoning and that he was already in the process of, you know, had some plans and thinking about it. And then all of a sudden you come along and put a moratorium on in 2012 and lock them up, lock this property up for six years. They couldn't do anything. That's not supported by the record one bit. That is absolutely false. This property had no plan, no application. There is no sketch plan that was made before the moratorium was enacted. And Maryland is a vested right state, as I'm sure you're aware. As you said, you have to have a valid building permit and you have to perform substantial construction based upon that valid building permit in order to have a vested right against a change in zoning of your property. They don't even challenge the zoning change in this case. They're challenging the interim density regulations or moratoria of bills 1214 and 1257 that were first enacted in 2012. Does it have the effect of being a zoning change when you put a moratorium? Does it You do not. And there's a good reason. Moratoria are essential, useful, land-use tools, as the Supreme Court explained in Tahoe Sierra when they upheld them and said that they're lawful. You do not have to have an exigency, as Mr. Gabler claimed. That is not the law. The law enables local jurisdictions to maintain the status quo and put a hold on density and development while they strategize and plan so that that was the process that was ongoing while the moratoria were in effect. Well, Ms. Sherrill, why did it take six years? I mean, why six years? Thank you, your honor. I was just going to get to that. What happened is that it didn't take six years. It took four years for the county to enact the 2016 comprehensive plan, okay? And it took that long in part because of this case being filed and also largely because of state plan, especially for a county like Talbot County. Talbot County's western villages in particular are completely surrounded by water. Those waters flow into the Chesapeake Bay. There are extreme comprehensive state regulations protecting the Chesapeake Bay, and they require local jurisdictions to go through a certain process that is cumbersome and time-consuming. There's absolutely no evidence, on the other hand, in this case that the county delayed in any way or that they intentionally delayed or that it took longer than it should have taken for the comprehensive plan to be enacted. There are public hearings. There are planning staff, zoning staff. There is public input. There is input by public agencies. For instance, the Maryland Department of Planning, which was Talbot County, has a large critical area under the Critical Areas Commission and that legislation enacted by the state. And in fact, Leyland's property is almost entirely critical area, which is why it was rezoned to a resource conservation zone and taken out of the VC zone during the comprehensive plan. So to specifically answer your question, however, the comprehensive plan was adopted in 2016, so that's a total of four years. Then the county had to go through a competitive bidding process to hire a company that would redraft the zoning regulations based on the comprehensive plan. State law in the environmental article requires that the new rezoning be consistent with the comprehensive plan. And so once that company was hired, that company had to ensure that that occurred. They had to come up with an original draft that was then reviewed by the county attorney, by the county council, went back to that company. It was reviewed by planning staff, by zoning staff, and comments were made. And it had to be finally revised and acted upon by the county council to adopt the rezoning changes and match what was said. You know, you're giving a very good comprehensive explanation, and I got to believe the trial court heard just as much or more than we did. And trial court was concerned about the six years, but nonetheless, you know, worked with it. But he was definitely concerned about it. But I do have a question, and that is, your opponent indicated that the parents subdivided this property back in 1991. They had bought it, and can we or should we credit those actions to this corporation? I guess in privy, some kind of privy with them, or do we look at that as the distinct type action? So the Darby Farm subdivision was approved in 1991 by the county, and it could be built at any time. The campers chose not to develop it, and it has been sitting there unused all of these years. When the campers had both passed away, the children, which are Gene Bryan and Mr. Camper, forget his first name, I'm sorry, they inherited it, and they were 50-50 owners of the property from that point forward. In 2002, they incorporated forming Clayland LLC in order to move forward under, I guess, to protect themselves from liability and tax liabilities. But the point is, is that in the articles of incorporation for the LLC, there's mention of farming, there's mention of residential leases to tenants who are living on the property, but there's absolutely no mention of any intent to residentially subdivide the property or develop it. And so for Gene Bryan to say the intent was to residentially develop the property in the future, she was talking about her grandchildren, she was talking about her desire to maintain VC zoning of the property in perpetuity. She did not want the county to be in a position to be able to downzone her property. I guess she saw the writing on the wall, she saw the political climate, she guessed that her to interfere with the process and prevent that from happening. But she never actually, you know, the strange thing here is that plaintiff never has amended the complaint to actually challenge the new rezoning. So this case is not about her zone or any development rights whatsoever because Clayland has none. Clayland has no vested rights. Is there any scenario under which Clayland Farm Enterprises could bring a regulatory takings action if it didn't have a constitutionally protected right interest for purposes, for due process purposes? The way I've read Washlefsky's case in particular, you have to have a property interest to support a takings claim or any constitutional claim. You have to have that property interest under state law. And Maryland is a vested rights state and there's really no other basis other than vested rights. I mean, if you're not challenging the zoning, then the question becomes what is the property right here? And the only property right that could exist to support the takings of this substantive due process claim is if they had submitted an application before the moratorium was enacted. What happened in the case of Poteet where you had, where the court did go ahead and conducted the Penn Central type analysis, even after it found that the plaintiff had not been deprived of any constitutionally protected property. Go ahead. Sorry, let me cut you off. We did go ahead and submit and they assumed the hypothetical property caused by the changes that were made by the Montgomery County Planning Board to its master plan. And the court there, consistent with all of the other Fourth Circuit cases, held that even if there's an 83% diminution in value, that's insufficient to support a takings claim. And so there were other cases where the diminution in value had been as high as 92.5% and the court still said that was insufficient to support a takings claim. And so, you know, and Poteet had also invested millions of dollars and lots of time. The county had ignored them for five years, which really was a de facto moratorium. And yet the court said, nope, there's no property interest here. And even if there were a property interest, there's no regular court taking and there's no due process violation. And in fact, the Pulte court actually said, this court said in Pulte, I should say, that if you don't have a due process violation, then you can't say that you have a regulatory taking. And so they had cited to Quinn and to Skilvia. And there's also the state case of Neifert versus Maryland Department of the Environment, where the court had held that there's no constitutional right to steward service. And they had gone on and on citing to all the recent case law by this court stating that these types of restrictions and the effect they have are not unconstitutional and they do not constitute a taking. But going back to the purposes for the which are what is challenged here, they were put in place under the authority of the Supreme Court's decision in Tahoe Sierra. The court there clearly indicated that limitations on the density of development that are intended to maintain and preserve the status quo, while this type of comprehensive replanning and rezoning goes on are entirely legal. And that's is that issue here. And it's like you said, Judge Nguyen, the district courts seem to take pause in the third element of the Penn Central analysis when it said that it questioned the duration and the reasons given by the county for the duration of the moratorium. And while I understand the district court's concern, I have to respectfully disagree. And I think that district court misunderstood the change in state law and how it how it was handled by the county when they said we're going to change comprehensive plan being due every six years and make that 10 years. The court seems to believe that the county had somehow delayed because they could have finished it sooner or seem to believe that the change in the law gave them plenty of time and yet they didn't do it. I'm really not sure what Judge Russell was thinking. But it's actually the opposite reason that that law was changed. That law was changed because local jurisdictions having to replan comprehensively every six years was impossible. As soon as they finished one comprehensive plan cycle, they'd be right back at the beginning of they have limited staff and the process is encumbered very heavily in Maryland due to environmental regulations and requirements. And that's especially true for a county like Colbert when Maryland district court has to be surrounded by water. So I think, you know, I just have to respectfully disagree with the court on that. I think the duration was both reasonable and shown to be necessary. And there was no evidence to the contrary that was abused by the plaintiff, Clayland Farm. In other words, Clayland was unable to show at any point or time, any evidence that the process took longer than it should have taken. I guess I don't know how to otherwise state it. I don't think there's a constitutional analysis for, you know, how quickly a political body can function or its processes should occur. I think that here there just, there's just no evidence that it wasn't reasonable and necessary and the burden is definitely on the plaintiff to prove otherwise. And I think that we showed with respect to Bill 1229 that the reason Tier 4 and Tier 3 categories were provided to Clayland Farm was because this property did not fit neatly within any of the other tier definitions provided by the implementation and guidance issued by the Maryland Department of Planning, which particularly at the Joint Appendix 519 of 520, the guidance specifically says that if you are not in a designated growth area but you have sewer service, that you can go into any tier. It specifically says that. And it says that properties that don't fit neatly within any tier on the page can be placed in any tier. And it also says that if you're in an agricultural or forested area, as opposed to inside a village, or if it was actually and, or if you're in a village, you could be categorized as Tier 4. So, you know, the county attorney at the time went back and forth with the Maryland Department of Planning to ensure that he was interpreting it Clayland's property was correctly put largely in Tier 4 and it was part of it was put in 3B and the Maryland Department of Planning made no comment, meaning that it agreed with that. But more importantly, the tier had no effect on Clayland Farm because it didn't attempt to do anything. You know, I hear Mr. Gabler saying repeatedly that we prevented, we prevented doing this or that. We did not. Clayland never attempted at a plan, never intended to do anything with its property. The only drawing that exists is the one that was created by its expert witness in this case, who came up with a site development plan so that their appraisal expert could then opine about the difference in value before enactment of the moratorium and after enactment of the moratorium. And really this is key evidence here. Plaintiff's own expert appraiser says the property was diminished in value by 1.3 million dollars due to the IDRs, but under the IDRs was still worth on the market 1.95 million dollars. So even under the moratoria Clayland could have sold its property for almost 2 million dollars according to its own expert. How under those circumstances can they plausibly assert a regulatory takings claim? They can't. And so this report properly ruled in favor of the county granting summary judgment on that claim. And as far as substantive due process, there's nothing there to indicate any of the factors that you would need to show a substantive due process violation. There's no evidence that Clayland was in any way targeted. On supplemental briefing in the district court, we came forward with maps of every single one of the 22 villages showing other large parcels that were affected by the moratorium and by the Bill 1229 tiers that were temporarily assigned no longer exist. And we also provided a chart here's beginning at JA Joint Appendix 216. And that chart shows other large parcels other than laws including moratorium and the tiers. And so the factors you would need to prove a substantive due process claim simply did not exist here and thus the district court properly entered summary judgment there on that claim. And I would just quickly throw in in case your honors had any questions about the mootness. I think that that was obviously a correct ruling by the district court that the claims challenging legislation that's no longer in existence were moot and that any opinion on this would have been advisory in nature. Unless you have any questions. All right. Thank you, Ms. Shearer. Thank you. Mr. Gabler, you have some rebuttal time. Thank you, your honor. Briefly, a couple quick comments. The tier map legislation that was expressly says that tier one is for properties with sewer. It doesn't say tier four is proper. It says tier one. And in this particular instance, when the map was first published, Colby County got a comment from MDP. It was an informal comment that said, this is an improper designation for this property. Now, later on, they got another comment from them, but that was the initial comment was tier four is not appropriate for the property has sewer. What was the follow-up comment? There was no follow-up comment. I'm sorry, your honor. They said something like you've complied with the law or you've met the requirements or something, something more broad and sort of generic, but not specific. It looked to me like the description of the property in tier four was exactly the way the record shows that the children formed Clayland in 2002 and then set the property up in an agricultural status to get a tax benefit. And that the IRS then put a lien on it for 10 years and kept the property in that form. They got over those years, they got a benefit, a tax benefit, which only ended in 2012. Isn't that right? That's correct, your honor. It ended in 2012. And I believe they could have ended it earlier by some kind of a voluntary payment or something. Well, that's even more indicative if they could have, they didn't. Again, the moratorium was approved in 2012, your honor. I understand, but the complaint you keep advancing is that we had this valuable property, right? We wanted to develop it. We had all these plans and they interrupted it with their moratorium and the record doesn't seem to support that. Even if that were good enough. I don't know if that's good enough. It seems to me under Maryland law, you would have to take more concrete action to develop the property in order to get some kind of protected right. Well, your honor, we've cited the U.S. versus good case, I believe is the name of it, which stands for the proposition, if I recall correctly, that inaction does not bar a takings claim. And in point of fact, we don't have to- I was talking about the substantive due process. If you want to talk about the takings claim, that's a little bit more difficult for you. I mean, the value of the land, there was a substantial value of the land, even after the zoning. I understand that, your honor. And as far as I am aware, there's no threshold dollar amount that you have to meet. I understand Pulte said 83% was not enough, but when I read Pulte, that case also seems to say that the second and third factors under Penn Central did not weigh heavily in plaintiff's favor. In our case, we believe that it's the opposite. We believe that the character of this moratorium, I mean, what is Talbot County telling us? That for every 10-year planning and zoning cycle they go through, they're going to stop everyone from doing any kind of subdivision and development for the first six years? And then for the last four of the cycle, you get to try to, you know, use it under the new zoning that they give you, and then they start that process all over again? And how long is too long? Would eight years be too long? Would 10 years be too long? I mean, this was a six-year moratorium that did nothing other than prevent people from using the rights that Talbot County gave to the property. Our client did not zone this property under Village Center. The county gave us the zoning. We had the right to use that zoning once it was conferred without being interfered or obstructed by an unlawful moratorium. I realize I keep going back to that point, but I think Judge Russell was very clear, and I agree with his discussion of that wholeheartedly, that this was a very concerning, if not explicitly unlawful, regulation by the county. What was the purpose of stopping people from pursuing their development rights until they changed the zoning? What's the purpose of that? It's directly taking something away from people that the county gave to them in the first place. So, our clients and any other person who had a similar zoning should have the right to go down, file an application, and pursue it until the zoning is properly changed. And in this case, the county reversed that sequence, and presumably, if the court doesn't rule in our favor, they're going to continue to do that. And I would ask the court to focus on that moratorium. It's not a vested rights issue like in Sierra. It's a moratorium, and I agree that you shouldn't look at these moratoriums as if they were changes in the zoning or treat them like that. These are an unlawful deprivation of our rights. Thank you. All right. Thank you, Mr. Gabler. Well, thank you, both parties. It's our custom and practice to come down off the bench and shake hands with you, but I'm not quite sure where both of you are. Are you both on the Eastern Shore right now? Mr. Gabler, where are you located? Annapolis? We're in Easton today. Easton, Easton. And Ms. Sierra, where are you located? I'm in Columbia, Howard County. Columbia, Howard County. Well, it's a little hard for us to make a visit down off the bench, but we would normally do that. We thank you for the arguments, and we'll stand adjourned. Thank you. Very much. Thank you. This honorable court stands adjourned until tomorrow. God save the United States and this honorable court.
judges: Paul V. Niemeyer, James A. Wynn Jr., Henry F. Floyd